strue his long acquiescence in the retention of the balance of his earnings in 1876 into an admission on his part that the sum had been or should be applied to the payment of the consideration due from him on the purchase of the steamboat, and a recognition by him of the understanding or arrangement that the surplus of his wages, above his necessary living expenses, should be thus applied.

2. I have more difficulty in regard to the second exception, and the trouble arises from two sources: First, from a doubt whether the transaction falls within the prohibition of section 4536 of the Revised Statutes, and, second, if it does not, whether, in view of the indefinite terms of the agreement, there is any authority, without the express or implied assent of the pilot, arbitrarily to apply all that remains due of the earnings of 1878 to the payment of his debt. With regard to the first. is the case under consideration an assignment or sale of wages, in the sense in which these phrases are used in the section? It may come within the letter of the statute, but it does not fall within its spirit and intent. The legislation is for the benefit of seamen, who are the wards of the admiralty courts, and no interpretation should be given to it which would work to their injury. It will hardly be affirmed that the construction invoked by the proctor of the libelant would advance the interests of, or result in benefit to, the seamen, as it deprives them of all opportunity of buying a share in vessels and applying their future services on board in their navigation toward the payment of the purchase money. I must therefore hold that there was no such assignment or sale of wages by the libelant as rendered the contract or agreement void; and that the respondents are entitled to withhold such portion of his earnings as he could spare from his living expenses for the payment of his indebtedness. But it does not follow, from the foregoing construction of the agreement or of the law, that the respondents are entitled to retain the balance of the wages of 1878 in controversy without the assent of the libelant. As soon as the season closed he demanded the residue of his earnings. His monthly wages had been reduced, and there is no proof that he ever acknowledged that it did not take the whole for his support. Under the contract and arrangement set forth and admitted in the answer, the respondents had no right to retain any sum, large or small, without his consent, as he was the sole judge of the necessary living expenses; and no such acquiescence can be inferred in regard to the earnings of 1878 as must be inferred from those of 1876.

The exceptions to the report must be sustained, and a decree be entered in favor of the libelant for the balance due for his services in 1878, as found by the commissioner. to wit, the sum of $297.68, with interest from the 1st day of January, 1879, to the date of signing the decree.

## Case No. 13,170.

### SOMERS v. TAYLOE.

[2 Cranch, C. C. 138.] [1]

Circuit Court, District of Columbia. April Term, 1817.

EVIDENCE—WRITTEN CONTRACT—PAROL—DEMAND—WAIVER.

1. If a written contract between A. and B., for the delivery of corn, contain allusions to C. and D. tending to show their interest in the contract, parol evidence may be given to show that A. was the agent of C., and that B. was the agent of D., and that the contract was made by A. and B. for and in behalf of their respective principals; and the contract may be admitted in evidence in an action by C. against D. for the nondelivery of the corn which was the subject of the contract.

2. If the defendant positively refused to deliver the corn according to the contract, such refusal dispensed with the necessity of a demand on the part of the plaintiff, and of proof of averment that he was ready at the landing to receive the corn.

This was a special action of assumpsit, for not delivering corn according to a written contract between Greenlow and Raymond. The declaration avers that Greenlow was the agent of Daniel Somers, and Raymond the agent of John Tayloe.

Mr. Swann, for defendant, objected to the contract being read in evidence on this declaration. because the agreement does not show the agency of the parties, and no parol evidence can be given to explain the written contract.

Mr. Taylor and Mr. Lee, for plaintiff, observed that the contract was not under seal, and was offered in connection with the letters of Mr. Tayloe acknowledging the contract as his, and as made with Mr. Somers.

THE COURT (nem. con.) was of opinion that as, in the contract, the corn is said to be the corn upon Colonel Tayloe's plantation called "Oaken Brow," and as there are several other references in the contract to Colonel Tayloe and Mr. Somers. the plaintiff might give parol evidence of the agency of the parties.

Mr. Swann, for defendant. moved the court to instruct the jury that the plaintiff must prove a demand of the corn.

Mr. Taylor, contra. The defendant, by his letters of the 12th and 24th of June, declares that he will not deliver it. This absolved the plaintiff from his obligation to demand it.

THE COURT (nem. con.) decided that the demand was waived by the defendant's declaration that he would not deliver the corn.

One count of the declaration averred that the plaintiff was ready at the landing to receive the corn: and Mr. Swann prayed the court to instruct the jury that, upon that count, it was necessary that the plaintiff should prove that fact.

But THE COURT decided that the plaintiff need not prove that averment. if he proves that the defendant waived the demand, by de-

1 [Reported by Hon. William Cranch, Chief Judge.]

claring that he would not deliver the corn if demanded.

Verdict for the plaintiff, $375.

SOMERSET & K. R. CO. (CHILDS v.). See Case No. 2,682.

## Case No. 13,171.
### SOMERVILLE v. The FRANCISCO.
[1 Sawy. 390.] 1

District Court, D. California. Dec. 1, 1870.

SEAMEN—WAGES—AGREEMENT TO RENOUNCE.

An agreement made between the master and the cook of a fishing vessel by which the latter agreed to renounce his wages, earned and to be earned, and to accept in lieu thereof the catch of one of the seamen, pronounced unequal and unjust and to be disregarded by a court of admiralty.

[This was a libel for wages by Frederick Somerville against the brig Francisco.]

Daniel T. Sullivan, for libellant.
Milton Andros, for claimant.

HOFFMAN, District Judge. The libel in this case is filed to recover wages alleged to be due the libellant for services as cook on the above vessel, on her late fishing voyage from this port to the Okhotsk Sea. The shipment of the libellant as cook and the rate of wages agreed to be paid him are not disputed.

The defense set up is, that the libellant was incompetent and negligent. That the crew became discontented with the manner in which he discharged his duties, and demanded of the master that some change should be made. That the master thereupon proposed to the libellant to take the place of one Peterson, a fisherman on board, to relinquish to him the wages already earned by libellant as cook, and to receive in lieu thereof the fish already caught by Peterson, and the same share which Peterson was to receive of the fish, which he, libellant, might subsequently catch during the voyage.

That the libellant agreed to this arrangement, and that there is now due him only a share of the proceeds of the voyage, such as Peterson would have been entitled to.

In reply, the libellant alleges that he assented to the captain's proposition through fear and under duress.

By the terms of the articles each of the crew was to receive three tenths of the fish which he might individually catch, subject to certain specified deductions and charges. The vessel sailed on the tenth of April, 1870. The alleged agreement was made on the eighteenth of July. The voyage proved unprofitable. The amount which would be

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

due to the libellant under the alleged agreement is an inconsiderable sum, far less than the amount of his wages.

The allegations of the answer, and the proofs offered at the hearing, leave it somewhat uncertain whether the defense relied on is the incompetence and neglect of the libellant, and the consequent right of the master to withhold his wages in whole or in part, or a voluntary renunciation by him of his contract as cook, and the acceptance of a new employment on the same terms and conditions as those on which Peterson had contracted.

There can be no doubt that whenever an officer or mariner proves incompetent to discharge the duties he has contracted to perform, the master may degrade him, and the amount of his compensation will be determined not by the contract but by the value of the services he has actually rendered.

But, in this case the proofs of incompetence or negligence on the part of the libellant are wholly insufficient. Some dissatisfaction was manifested by the crew at Honolulu, but this seems to have been on account of the quantity rather than the quality or mode of cooking the food supplied them. If the latter was the case, it is by no means clear that it was occasioned by the fault of the cook. The captain himself appears to have assured the men that the libellant was a good cook, but offered to procure another if one could be had, provided the men would pay the three months extra wages required to be deposited on the discharge of a seaman in a foreign port. This the men declined to do, and the vessel proceeded on her voyage. On the eighteenth of July, some time after the vessel had arrived on the fishing grounds, the men were not furnished coffee as was usual when first called out in the morning, and no breakfast was prepared at the customary hour. They thereupon proceeded aft in a body, and informed the master that they could not and would not work unless their coffee was served to them and their breakfast prepared. The master then called the cook, or went to the galley and spoke to him, as the latter alleges, in a very violent and threatening manner. The excuse given by the cook was that the breakfast had been overturned by the heavy rolling of the ship, and that one of his hands was so sore from the effects of a splinter as to deprive him of its use.

Shortly afterwards the cook was called into the cabin, and the arrangement to take Peterson's place was entered into. It is proved that the ship was rolling very heavily, and that some of the dishes or pans on the stove were capsized. It is also proved that the cook's hand was and had for some days been sore and festered, so as greatly to interfere with the performance of his duties.